IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2003

## STATE OF TENNESSEE v. DENA PAULETTE RACKLIFF

**Appeal from the Criminal Court for Robertson County**
**No. 00-0275    Michael R. Jones, Judge**

_____

**No. M2001-02953-CCA-R3-CD - Filed February 21, 2003**

_____

The Defendant, Dena Paulette Rackliff, was found guilty by a jury of falsely accusing her ex-husband of sexually abusing their seven-year-old daughter, which constitutes a class E felony. The trial court sentenced the Defendant as a Range I offender to eighteen months in the Robertson County jail. The trial court further ordered that after the Defendant served ten days in jail, her sentence would be probated for six years. The Defendant presents three issues in this appeal as of right: (1) whether the evidence is sufficient to support the conviction for falsely reporting child sexual abuse; (2) whether the trial court erred in instructing the jury on the conduct that constitutes the crime of falsely reporting child sexual abuse; and (3) whether the sentence imposed by the trial court is excessive. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Dennis Campbell, Sevierville, Tennessee, for the appellant, Dena Paulette Rackliff.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; John Carney, District Attorney General; and Dent Morris, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Robertson County jury found the Defendant guilty of falsely reporting that her ex-husband sexually abused their seven year old daughter in violation of Tennessee Code Annotated section 37-1-413. The trial court sentenced the Defendant to eighteen months in the county jail. After she serves ten days, the Defendant will be allowed to have her sentence probated for six years. In this direct appeal, the Defendant argues: (1) that the evidence presented at trial is insufficient to support a conviction for falsely reporting child sexual abuse beyond a reasonable doubt; (2) that the jury

instruction on false reporting of child sexual abuse was erroneous; and (3) that the sentence imposed by the trial court is excessive.

On January 16, 2000, Evelyn Collins of the Department of Children's Services in Robertson County received a call from the Robertson County Sheriff's Department. She was instructed to meet with the Defendant, the Defendant's mother, Paulette Williams, and the Defendant's seven-year-old daughter, J.B.[1] Ms. Collins testified at trial that the Defendant told her that J.B. had complained about being touched inappropriately by her father, Robert Black. Specifically, the Defendant stated that J.B. told her that Mr. Black had "put his finger and toys into her private parts." The Defendant also told Ms. Collins that J.B. had been misbehaving sexually. For example, the Defendant stated that J.B. "fondled" or touched both her younger and older sisters, that she masturbated at night, and that she requested her stepfather to "tickle her private parts." Based upon this information, Ms. Collins called J.B.'s father, Robert Black, and asked him to meet with her. Ms. Collins testified that, during her interview with him, Mr. Black "seemed exasperated and concerned about [J.B.'s] being traumatized." Ms. Collins also stated that when Mr. Black arrived at the police station for the interview, J.B. ran into his arms and clung to him. Ms. Collins found no evidence that J.B. was afraid of Mr. Black, that anything inappropriate was going on between them, or that Mr. Black had abused J.B.

During her investigation of Mr. Black's relationship with J.B., Ms. Collins arranged for J.B. to reside with her paternal grandparents rather than with Mr. Black, who had full custody of J.B. Ms. Collins testified that as J.B. was leaving the Defendant to go with her grandparents, the Defendant said, in J.B.'s presence, "[N]ext time I see her she'll be in her coffin." During the time of the investigation, the Defendant called Ms. Collins three times. The Defendant told Ms. Collins that she had filed for emergency custody of J.B. because she feared for J.B.'s safety. The Defendant also told Ms. Collins that she had made reports of abuse before but that no action had been taken, and she wanted Mr. Black prosecuted.

Ms. Collins testified that J.B. was examined by a branch of Vanderbilt Children's Hospital called the Our Kids Clinic, which is a medical center that specializes in treating children who are suspected victims of sexual abuse. The report generated by the Our Kids Clinic reflected that no evidence of sexual abuse was found. In addition, Ms. Collins testified that on three prior occasions, the Defendant had taken her daughter J.B. to be examined for evidence of sexual abuse.

J.B. testified that her father had never touched her in an inappropriate way. When the district attorney general asked J.B. whether Mr. Black had "ever put his finger inside you where he shouldn't have," J.B. replied, "No." She also testified that she never told anyone that Mr. Black had touched her in an inappropriate manner. However, on cross examination, defense counsel asked J.B. whether she remembered "telling your mother that your dad had kind of tickled your privates. You'd play a tickle game? Do you remember that?" J.B. responded that she did tell the Defendant those things.

---

[1] It is the policy of this Court to refer to children in sexual abuse cases by their initials.

She also verified that she had told the Defendant that sometimes Mr. Black would be "tickling [her] throat and it felt like choking."

Robert Black testified that he was awarded custody of his daughter J.B. after his divorce from the Defendant in November 1997. Mr. Black stated that the Defendant has accused him of sexually abusing J.B. on four separate occasions. In January 1998, during J.B.'s first visitation with the Defendant, the Defendant accused Mr. Black of molesting J.B. for the first time. As a result, Mr. Black filed for "protection" of J.B. After the Department of Children's Services examined the allegations of abuse, the Robertson County Chancery Court granted Mr. Black full custody of J.B. The Defendant then filed for a change of custody, which was denied.

The Defendant again accused Mr. Black of sexually abusing J.B. around June or July of 1998. The Department of Children's Services conducted another investigation. Approximately six months later, early in 1999, the Defendant accused Mr. Black of sexual abuse for a third time. The Department of Children's Services for Robertson County performed another investigation. Finally, the Defendant accused Mr. Black for a fourth time in July 2000, which resulted in the instant prosecution. Mr. Black testified that at the time the present allegations were made by the Defendant, he had a petition pending to terminate the Defendant's visitation rights because of the traumatic effect that the allegations and investigations, which include pelvic examinations, have had on J.B. After each accusation, the Department of Children's Services conducted an investigation, during which J.B. was removed from Mr. Black's care. None of the investigations led to Mr. Black being prosecuted for abusing J.B. Mr. Black admitted that he and J.B. do play a tickle game as she is very ticklish in the ribs and on the back of her knee. However, he denied ever touching her in an inappropriate manner.

Dr. William Kenner, a child psychiatrist hired by Robert Black, testified that he met with J.B. on two occasions in February 2000. Dr. Kenner stated that he had been made aware that the Defendant accused Mr. Black of sexually abusing J.B. Dr. Kenner testified that he found no evidence that J.B. had been sexually abused. However, he did tell the court that the repeated allegations of sexual abuse had affected J.B. He explained that the questioning, pelvic examinations, and use of anatomically correct dolls have "in essence, to a lesser degree, a similar effect to being sexually abused in that it focuses rather intense attention on [the] genital area and questions that … don't normally arise for a child of this age." Dr. Kenner also stated that a parent who is making false accusations of child abuse will tend to go from doctor to doctor or from agency to agency in an attempt to find someone who will believe their allegations. Dr. Kenner mentioned several possible reasons for making such a false accusation, such as the accusing parent having been the victim of abuse or to gain custody and control of the child.

The Defendant testified that she believes that Robert Black has sexually abused J.B. based on the sexual behavior of J.B. She stated that she has never been the victim of sexual abuse and that she did not make up the reports of abuse to gain custody of J.B. The Defendant denied that she agreed for J.B. to reside with Mr. Black's parents, and she denied making the statement that "[N]ext time I see her she'll be in her coffin" in J.B.'s presence. The Defendant also denied calling Robert

Black in August 1998 to apologize for falsely accusing him of sexually abusing J.B. The State then called Robert Black as a rebuttal witness to testify that such a conversation did take place.

The Defendant first argues that the evidence is insufficient to sustain her conviction for falsely accusing her ex-husband, Robert Black, of sexually abusing their seven year old daughter, J.B. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Tennessee Code Annotated section 37-1-413 states, "Any person who either verbally or by written or printed communication knowingly and maliciously reports, or causes, encourages, aids, counsels or procures another to report, a false accusation of child sexual abuse commits a Class E felony." The proof at trial established that Evelyn Collins of the Department of Children's Services detected no indications that J.B. was the victim of abuse or that there was anything inappropriate about the relationship between J.B. and her father. Likewise, the report by the Our Kids Clinic at Vanderbilt Children's Hospital reflected that no evidence of abuse had been found. Dr. Kenner testified that, in his expert opinion as a child psychiatrist, there was no evidence indicating that J.B. had been abused. And both J.B. and her father, Robert Black, testified that he has never touched her in an inappropriate or abusive way. This proof was sufficient for the jury to conclude that the Defendant had falsely accused Mr. Black of sexually abusing J.B. beyond a reasonable doubt.

The next factual issue is whether the evidence established that the Defendant acted knowingly and maliciously in falsely reporting child sexual abuse. Mr. Black testified that the Defendant had accused him of sexually abusing J.B. four times. After each accusation, an

-4-

investigation was conducted by the Department of Children's Services, during which J.B. was removed from Mr. Black's custody. Each time the investigation yielded no evidence that J.B. had been abused. Dr. Kenner testified that a parent who is falsely accusing the other parent of child abuse will often "shop" for someone to believe them. However, the Defendant testified that she believed that Mr. Black had been abusing J.B., and she stated that her accusations were not the product of any improper motive. The jury obviously discredited the Defendant's testimony and found the Defendant to be untruthful. The credibility of the witnesses, especially the credibility of the Defendant who testified in her defense, was the crucial issue for the jury to resolve on the point of whether the false accusation was made knowingly and maliciously. The jury resolved this issue in the State's favor. We find that the evidence is sufficient to entitle the jury to conclude that the Defendant knowingly and maliciously reported a false accusation of child sexual abuse against Mr. Black. Accordingly, the evidence is sufficient to support the Defendant's conviction for falsely reporting child sexual abuse beyond a reasonable doubt.

Next, the Defendant argues that the trial court's instruction to the jury on the conduct that constitutes falsely reporting child sexual abuse was improper. The challenged instruction stated, "Any person who makes a false report of child sexual abuse is guilty of a crime." The Defendant argues that this instruction allows for the conviction of a defendant who makes a false report of child sexual abuse believing it to be true. However, a challenge to a single jury instruction must be judged in context of the entire jury charge rather than in isolation. See State v. Bolin, 678 S.W.2d 40, 43 (Tenn. 1984); State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998). The instruction immediately following the challenged instruction states, "For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt that the defendant knowingly and maliciously reported a false accusation of child sexual abuse" (emphasis added). Thereafter the trial court gave instructions regarding the definitions of the words "knowingly" and "maliciously."

When read in context with these other instructions, the challenged instruction would not allow for the conviction of a defendant who reported a false accusation of child sexual abuse but believed it to be true. Furthermore, the jury was instructed as to the presumption of innocence and as to reasonable doubt. Therefore, the jury instructions, viewed as a whole, were not erroneous or misleading, and this issue is without merit.

Finally, the Defendant contends that the sentence imposed by the trial court is excessive. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the

criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The presentence report reflects that, at the time of sentencing, the Defendant was thirty years old, married, and had three daughters. She graduated from high school in 1989, and, although her employment history is unsteady, she was a stay-at-home mother at the time of sentencing. According to the presentence report, the Defendant has no prior criminal history.

At the sentencing hearing, the trial court gave great weight to the enhancing factor that the Defendant abused a position of private trust. See Tenn. Code Ann. § 40-35-114(16). As a mitigating factor, the trial court found that the Defendant was suffering from a mental condition that significantly reduced her culpability. See Tenn. Code Ann. § 40-35-113(8). The trial court based this finding on the trial testimony of Dr. Kenner. After weighing the enhancing and mitigating factors, the trial court sentenced the Defendant as a Range I offender to eighteen months in the Robertson County Jail. The trial court then decided that some incarceration was required. In determining that the Defendant should serve ten days in jail, the court noted

> The Court believes that this is a very serious offense. That it is horrifying. It is shocking, it is reprehensible. What was reported to the police would be a child rape, which is a Class A Felony, if a person is convicted of that charge, the minimum sentence is fifteen years times three hundred and sixty five days. No parole, no credit, nothing. And that is what this lady repeatedly is reporting to police. To me that is very reprehensible.
> She also takes absolutely no responsibility for these acts. Certainly no remorse in these acts.…This is not an isolated event, it occurred more than one time.…The nature and circumstances of the criminal conduct involved as well as depreciating the seriousness of the offense, to me demands some jail time.

Pursuant to Tennessee Code Annotated section 40-35-303(c), the trial court then ordered that after serving ten days, the Defendant would be placed on probation for six years, the maximum sentence for a class E felony.

A criminal defendant challenging a trial court's sentencing decision has the burden of establishing that his or her sentence is improper. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; see also Ashby, 823 S.W.2d at 169. The Defendant has not met her burden in this case. Obviously the trial court placed more weight on the factor that the Defendant abused a position of private trust when it sentenced her to eighteen months. Furthermore, the trial court explained that it believed incarceration was appropriate to avoid depreciating the seriousness of the offense, which is an appropriate consideration under Tennessee Code Annotated section 40-35-103(1)(B). Finally, the period of probation may be for a period up to "the statutory maximum time for the class of the conviction offense." Tenn. Code Ann. § 40-35-303(c). The total range of punishment for falsely reporting an accusation of child sexual abuse, a class E felony, is from one to six years. See Tenn. Code Ann. § 40-35-111(b)(5). Thus, the six years of probation was within the allowed range. Based on our review of the record, we are unable to conclude that the trial judge erred or abused his discretion in sentencing the Defendant. This issue is without merit.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

-7-